# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DISTRICT

| | |
|---|---|
| LEE CATLEDGE, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | 07 C 2116 |
|     v. ) | |
| ) | Judge Ronald A. Guzmán |
| DIRECTOR ROBERT S. MUELLER ) | |
| and FEDERAL BUREAU OF ) | |
| INVESTIGATION, ) | |
| ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff has sued defendants pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(B), for their failure to produce various National Security Letters (NSLs) he requested. The case is before the Court on defendants' Federal Rule of Civil Procedure ("Rule") 56 motion for summary judgment. For the reasons set forth below, the motion is granted.

## Background

On April 6, 2006, plaintiff sent a FOIA request to the Federal Bureau of Investigation ("FBI") seeking NSLs issued pursuant to section 507 of the Patriot Act, 18 U.S.C. § 507. (Compl. ¶ 1; Mem. Supp. Defs.' Mot. Summ. J. at 3.) After exchanging various letters with the government, plaintiff narrowed his request to all NSLs issued pursuant to section 507 of the Patriot Act between October 1, 2003 and December 31, 2004 that pertained only to him. (*Id.*, Ex. 1, Hardy Decl. ¶¶ 7-20; *id.*, Ex. 2, Hr'g Tr. of 1/30/08 at 2-4.)

Defendants responded that they could not confirm or deny whether plaintiff was the subject of an NSL because such information was exempt from disclosure under FOIA Exemptions 7(E) and 2. (*Id.*, Ex. 1, Hardy Decl. ¶ 20.) Plaintiff contends that response was improper and seeks an order requiring defendants to produce any documents responsive to his narrowed request.

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, the discovery and disclosure materials on file, and any affidavits [must] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.* In a FOIA case, the Court may grant summary judgment to the government solely on the basis of affidavits if "the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exception claimed." *Patterson v. IRS*, 56 F.3d 832, 836 (7th Cir. 1995) (quotations omitted).

## Discussion

The "fundamental principle" behind FOIA is "public access to Government documents." *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 151 (1989). However, recognizing "that legitimate . . . interests could be harmed" if certain information is released, Congress balanced the public's right to know and the government's need for secrecy by requiring the government to disclose records unless they fall into one of nine exceptions. *Id.* at 152 (quotations omitted); *see* 5 U.S.C. § 552(a), (b). Moreover, the government may refuse "to confirm []or deny the existence of requested records," a so-called *Glomar* response,[1] if "even acknowledging that certain records are kept would jeopardize the privacy interests that the FOIA exemptions are intended to protect." *Antonelli v. F.B.I.*, 721 F.2d 615, 617 (7th Cir. 1983). Defendants contend that their *Glomar* response to plaintiff's narrowed request was proper because confirming or denying that plaintiff is the subject of an NSL would cause the very harm FOIA exemption 7(E) is designed to prevent.

FOIA exemption 7(E) allows the government to withhold:

> [R]ecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations . . . , or would disclose guidelines for law enforcement investigations . . . if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E). This exemption applies only to techniques and procedures "generally unknown to the public" and only if "(1) the information was compiled for law enforcement

---

[1] The *Glomar* response "tak[es] its name from the *Hughes Glomar Explorer*, a ship built . . . to recover a sunken Soviet submarine, but disguised as a private vessel for mining manganese nodules from the ocean floor," that was the centerpiece of *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976). *Bassiouni v. CIA*, 392 F.3d 244, 246 (7th Cir. 2004).

purposes, and (2) [its] release could reasonably be expected to risk circumvention of the law." *Blanton v. U.S. Dep't of Justice*, 63 F. Supp. 2d 35, 49 (D.D.C. 1999) (quotations omitted).

Because the FBI has "a clear law enforcement mandate," defendants "need establish only a 'rational nexus'" between the FBI's law enforcement duties and the purportedly exempt information to satisfy the first requirement of exemption 7(E). *Binion v. U.S. Dep't of Justice*, 695 F.2d 1189, 1194 (9th Cir. 1983); *see* 12 U.S.C. § 3414(a)(1)(C) (requiring financial institutions to disclose customer records to any "Government authority authorized to conduct investigations of, or intelligence or counterintelligence analyses related to, international terrorism"); 15 U.S.C. § 1681u(a) (requiring consumer reporting agencies to give the FBI "the names and addresses of all financial institutions . . . at which a consumer maintains or has maintained an account . . . when presented with a[n appropriate] written request"); 18 U.S.C. § 2709(b)(1) (authorizing the FBI to obtain "the name, address, length of service, and local and long distance toll billing records of a person or entity" pursuant to an appropriate request). David Hardy, Section Chief of the FBI's Record/Information Dissemination Section, Records Management Division, says that NSLs are "indispensable investigative tools . . . in many FBI counterterrorism and counterintelligence investigations," and are used to:

> obtain[] evidence to Support Foreign Intelligence Surveillance Act ("FISA") applications for electronic surveillance, pen register/trap and trace devices, or physical searches; develop[] communication or financial links between subjects of FBI investigations and between those subjects and others; provid[e] evidence to initiate new investigations, expand national security investigations, or enabl[e] agents to close investigations; provid[e] investigative leads; and corrborat[e] information obtained by use of other investigative techniques.

(Mem. Supp. Defs.' Mot. Summ. J., Ex. 1, Hardy Decl. ¶¶ 1, 5, 32.) In light of the FBI's essential purpose, Hardy's testimony establishes that the NSLs plaintiff seeks were generated for a law enforcement purpose.

The second requirement for exemption under 7(E) is that disclosure of the NSLs would reveal previously undisclosed "techniques . . . for law enforcement investigations" that "could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Moreover, even if the existence of a certain technique is publicly known, Exemption 7(E) will still shield documents that reveal the circumstances under which it is used, if those circumstances are not publicly known. *See Blanton*, 63 F. Supp. 2d at 49-50 (noting that information about polygraph tests was widely available but holding that documents disclosing the circumstances under which polygraphs were given, which were not generally known, were exempt under 7(E).)

Such is the case here. Although the use of NSLs is generally known to the public, "the manner of use and subject[s] of the NSLs [are] not." (Defs.' Mem. Supp. Mot. Summ. J., Ex. 1, Hardy Decl. ¶ 42.) Further, disclosing the subjects of NSLs would compromise their effectiveness as a tool for counterterrorism and counterintelligence investigations:

> Public confirmation that an NSL concerning a particular person was issued would alert this individual that they are the subject of an investigation. By alerting a particular group of associates which of their members are subject to an investigation and the types of records obtained, they might learn the focus of the investigation and understand the inner workings of the use of NSLs as a technique in national security investigations. They could then adjust their means of communication or financial dealings to avoid detection of the very behavior that the law enforcement and intelligence community have determined may be indicative of a terrorist threat, and which form the core of pending investigative efforts.

(*Id.* ¶ 43.) Confirming that a particular person is *not* the subject of an NSL is no better. As Hardy points out, if the FBI routinely confirmed that requesters are not subjects of NSLs, the *Glomar* response would be a tacit admission that the requester was, indeed, the subject of an NSL. (*Id.* ¶ 44.) Thus, he says, the FBI must issue *Glomar* responses to all NSL requesters

5

to preserve "the integrity" of NSLs and the effectiveness of its counterterrorism and counterintelligence investigations. (*Id.*) That testimony is sufficient to satisfy the second requirement of exemption 7(E).

In short, defendants have established that confirming or denying whether plaintiff is the subject of an NSL would cause the harm, *i.e.*, "disclose [a] technique . . . for law enforcement investigations" that "could reasonably be expected to risk circumvention of the law," that Exemption 7(E) is meant to prevent. *See* 5 U.S.C. § 552(b)(7)(E). Because defendants have established that they properly issued a *Glomar* response to plaintiff's narrowed FOIA request, they are entitled to judgment as a matter of law on his FOIA claim.[2]

## Conclusion

For the reasons stated above, there is no genuine issue of material fact on plaintiff's claim that defendants improperly withheld documents responsive to his narrowed FOIA request, and defendants are entitled to judgment as a matter of law. Their motion for summary judgment [doc. no. 45] is, therefore, granted, and the case is terminated.

**SO ORDERED.**  ENTER: September 10, 2008

*Ronald A. Guzman*
_____
**RONALD A. GUZMAN**
**United States District Judge**

---

[2]The Court need not address defendants' argument that their response was proper under Exemption 2 as well.